MATERIALS DEVELOPMENT CORPORATION *vs.* COMMISSIONER
OF REVENUE.

No. 98-P-2288.

Suffolk. December 7, 2000. - November 27, 2002.

Present: ARMSTRONG, C.J., KAPLAN, & GREENBERG, JJ.

*Taxation,* Abatement, Interest and penalties, Withholding from wages,
Limitation. *Limitations, Statute of. Practice, Civil,* Statute of limitations.

This court concluded that the Appellate Tax Board erred in dismissing a
taxpayer's appeal from the Department of Revenue's refusal to abate inter-
est on overdue payroll withholding taxes, where the department's right to
collect the unpaid tax liability had terminated under the applicable statute
of limitations, G. L. c. 62C, § 65, because more than six years had passed
from the time when the taxpayer had filed its return to the time when the
department sent its notice of assessment [595-597], and where the fact that
the taxpayer had voluntarily paid the tax, while at the same denying any
present legal obligation to pay either it or the interest, did not constitute a
waiver of the statute's protection with respect to the interest [597-599].

APPEAL from a decision of the Appellate Tax Board.

*Morris M. Goldings* for the taxpayer.

*Christopher P. Quaye* for Commissioner of Revenue.

ARMSTRONG, C.J. Materials Development Corporation (tax-
payer) appeals from a decision of the Appellate Tax Board that
dismissed the taxpayer's appeal from the Commissioner of
Revenue's refusal to abate interest on overdue payroll withhold-
ing taxes. The circumstances were as follows:

For the first quarter of 1989, the taxpayer filed a timely return
reporting a total payroll tax owed for the period (including a
prior quarter adjustment) of $9,525.17, previous payments of
$450.51, and a balance due of $9,074.66. This was not paid
with the return; and if normal procedures had been followed,
the Department of Revenue in due course — usually one or two
months — would have sent the taxpayer a notice of assessment

for the unpaid balance, together with interest computed to a new due date and a penalty for the delinquency. The return was lost, however, and nothing more happened until, almost six years later, in early 1995, the department sent a notice advising the taxpayer that according to departmental records the taxpayer had failed to file a return for the period. In response, the taxpayer produced a date-stamped copy of its 1989 first quarter return. On July 11, 1995, the department issued its long-delayed notice of assessment, totaling $24,117.04, a sum that included $10,505.00 in interest and $4,537.34 in penalties.

The taxpayer then sought to correct its return for the period, claiming it had mistakenly shown on the return $3,669.54 that belonged to another payroll period. The commissioner accepted the contention, abated $3,669.54 of the tax reported as due, and issued a new notice of assessment recalculating interest and penalties based on the reduced delinquency of $5,405.12. Further discussion led the commissioner a year later (on November 6, 1996) to abate the assessed penalties in full. The taxpayer then filed an application for abatement of the assessed interest, which had now mounted to $8,115.12, on the ground that the delay in payment was as much the department's fault as the taxpayer's; but the application was denied, the department taking the position that G. L. c. 62C, § 32, required daily computation of interest on taxes not paid when due and that the commissioner lacked discretion to abate interest unless the underlying tax were abated. The board in effect agreed with this position when it allowed the department's motion to dismiss the appeal; and such authority as we have found seems to agree with the general principle.[1] See *Commissioner of Rev.* v. *Marr Scaffolding Co.*, 414 Mass. 489, 494-495 (1993) ("A taxpayer is entitled to an abatement . . . only if 'the tax is excessive in amount or illegal.' G. L. c. 62C, § 37 [1990 ed.]. . . . Equitable considerations, not prescribed by statute, are not major players in tax matters"); *Tambrands, Inc.* v. *Commissioner of Rev.*, 46 Mass. App. Ct. 522, 525 (1999).

---

[1]As to the department's unwavering position on this point, see *Blue Jay Corp.* v. *Commissioner of Rev.*, 16 Mass. App. Tax Bd. Rep. 134, 135 (1994); *Fields Corner Plate Glass Co.* v. *Commissioner of Rev.*, 16 Mass. App. Tax Bd. Rep. 157, 161-162 (1994); *PPC Constructors, Inc.* v. *Commissioner of Rev.*, 26 Mass. App. Tax Bd. Rep. 426 (2001).

Of greater concern is the taxpayer's contention that the department's right to collect the unpaid tax liability had terminated under the statute of limitations because the statutory time for collection, six years, had passed prior to the time when the department sent its notice of assessment on July 11, 1995. The statute of limitations in question is G. L. c. 62C, § 65, which, as amended by St. 1986, c. 488, § 53, provides that "[t]axes shall be collected within six years after the assessment of the tax, or prior to the expiration of any period of collection agreed upon in writing by the commissioner and the taxpayer before the expiration of such six-year period."

Absent evidence of an agreement within the relevant period, the focus of the statute is on the time of the "assessment of the tax." The taxpayer, relying on G. L. c. 62C, § 26(*a*),[2] argues that the tax was assessed for purposes of § 65 when it filed its return; the department, relying on its regulations,[3] argues that the date of the assessment was neither the date of filing the return (April 30, 1989) nor the date it issued the first notice of assessment (July 11, 1995), but rather a date appearing as an entry in the department's internal records assigning March 22, 1995, as the date the commissioner made the verified determination of the amount the taxpayer owed for the first quarter of

[2]Section 26(*a*), as appearing in St. 1976, c. 415, § 22, states: "Taxes shall be deemed to be assessed at the amount shown as the tax due upon any return filed under the provisions of this chapter and on any amendment, correction or supplement thereof, or at the amount properly due, whichever is less, and at the time when the return is filed or required to be filed, whichever occurs later."

[3]In particular, 830 Code Mass. Regs. § 62C 26.1(2) (1993) defines "assessment" as "the process of the [department's] determination or verification of the amount of the tax . . . and the entry of the amount of the tax due in the [c]ommissioner's assessment records; or the taxpayer's calculation and declaration of the tax due . . . completed in full on a return, including any amendment, correction, or supplement thereto, by the taxpayer . . . and duly filed with the [c]ommissioner." See 830 Code Mass. Regs. § 62C 33.1(2) (1993), defining "assessment" as "the act of determining or verifying the amount of tax due from a taxpayer and the entry of such amount on the [c]ommissioner's assessment records, including the acceptance of a taxpayer's calculations and declarations of tax as reported on a proper return duly filed by the taxpayer with the [c]ommissioner."

1989.[4] The flaw in the taxpayer's argument, according to the department, is a failure to recognize the distinction between the "assessment," as used in § 65, and the "deemed assessment" referred to in § 26(*a*); the limitations period of § 65 begins to run, according to the department, not when a return is filed, but only when the commissioner has verified the return and entered a determination of the tax in the departmental records. The department cites *Heritage Bank for Sav.* v. *Doran*, 399 Mass. 855, 860 (1987), but that decision does not support the department's argument. The *Heritage Bank* decision concerned the date of assessment, not against the property of the corporate taxpayer, which would normally sign the tax return (and hence be "self-assessed" under § 26[*a*]), but against the property of certain corporate officers whose liability to pay the taxes the corporation should have paid arose under G. L. c. 62B, § 5, and G. L. c. 62C, § 31A. Under the latter section, the decision held, the corporate officers were deemed "assessed" (and hence *their* property was made subject to a lien)[5] on the thirtieth day following notification from the commissioner to the officers that his assessment against the corporation remained unpaid and that he intended to seek payment from them personally. *Heritage Bank for Sav.* v. *Doran*, *supra* at 861. Nor does our decision in *Tambrands, Inc.* v. *Commissioner of Rev.*, *supra*, support the department's position. The *Tambrands* decision did not concern the assessment date for the amount shown as due on the taxpayer's timely-filed return — that amount was paid with the return — but rather the assessment date for the *additional* amount found by the commissioner to be due when he audited the return. Thus, the cases the department cites do not support its contention that the amount shown as due upon the return is not assessed on filing. Moreover, the department suggests no alternative reading for the words "deemed assessed" in § 26(*a*). We see no reason not to take § 26(*a*) at its word.

The relevance of the "deemed assessment" (i.e., the self-

---

[4]As to the distinction between the date of assessment and the date of notice of assessment, see *A.W. Chesterton Co.* v. *Commissioner of Rev.*, 45 Mass. App. Ct. 702, 709-710 (1998); *Tambrands, Inc.* v. *Commissioner of Rev.*, 46 Mass. App. Ct. at 523-524.

[5]See G. L. c. 62C, § 50(*a*), discussed *infra*.

assessment arising from the filing of a tax return) is reinforced by comparing § 65 (six-year limit for collection) with § 50(*a*) (six-year lien for unpaid taxes). The lien on the taxpayer's property, according to § 50(*a*):

> "shall arise at the time the assessment is made or *deemed to be made* and shall continue until the liability for the amount assessed or *deemed to be assessed* is satisfied. Said lien shall in any event terminate not later than six years from the date it was created."

G. L. c. 62C, § 50(*a*), inserted by St. 1976, c. 415, § 22 (emphasis supplied). The tax shown as due on a tax return is, under § 26(*a*), "deemed to be assessed" at the time the return is filed. The lien on the taxpayer's property for taxes not paid with the return arises under § 50(*a*) at the same time and expires six years from that time. The lien is the commissioner's vehicle for collection, and it would make little sense to rule that the six-year period the commissioner is given by § 65 to collect the tax ("shall be collected within six years after the assessment of the tax") refers to some different six-year period. Sections 50(*a*) and 65 are meant to be read together.

The filing of the taxpayer's return on April 30, 1989, show-ing $9,074.66 ($9,525.17 less $450.51 paid) as the tax due thus began the running of the six-year limitations period for collec-tion of that amount. All that occurred within that period was the department's March 22, 1995, entry of that amount in its record of assessments, together with interest and penalties computed to that time. To rule that the entry by the department began the statute of limitations running afresh would in effect vitiate the limitations statute. It follows that, on July 11, 1995, when the commissioner sent the notice of assessment to the taxpayer, the tax was uncollectible.

The department argues, however, that even if the taxpayer should succeed in showing that collection was time-barred, it is not entitled to the requested abatement. The department points to the fact that the taxpayer, while contesting its obligation to pay accrued interest on the underlying tax, agreed voluntarily to pay the tax itself and did so by two payments on June 24 and August 19, 1997. The voluntary payment, argues the depart-ment, under established statute of limitations principles

constituted an acknowledgment of the debt that had the automatic legal effect of waiving the protection of the statute, with the result that the entire debt, including the accrued interest, became again collectible. The department cites *Wenz* v. *Wenz,* 222 Mass. 314, 321-322 (1916), and *Our Lady of the Sea Corp.* v. *Borges,* 40 Mass. App. Ct. 484, 490-492 (1996).

The rule of acknowledgment by partial payment, however, does not operate quite so flatfootedly. In the decisions relied on by the department, the partial payments of the debtors acknowledged in effect that the entire debt was presently due and owed. Here, in contrast, the taxpayer paid the tax in recognition of a moral obligation, whether enforceable or not, but consistently denied any obligation to pay the interest. The rule in such cases is that stated in the early leading case of *Bangs* v. *Hall,* 2 Pick. 368, 374, 377 (1824): "that the case is to be taken out of the statute, if the defendant has within six years made an unqualified acknowledgment of an existing debt . . . , [but that] acknowledgment must go to the fact, that the debt is still due [emphasis omitted]." Such is the case where "the original cause of action is acknowledged, but qualified in such manner, as that it is doing great violence to the language to construe it into an acknowledgment of existing indebtment, or into a promise to pay." *Id.* at 375-376. To the same effect, see *Gillingham* v. *Brown,* 178 Mass. 417, 421 (1901); Corbin, Contracts §§ 9.6, 9.8 (rev. ed. 1996). The taxpayer's agreement to pay (and payment of) the underlying tax, at the same time denying any present legal obligation to pay either it or the interest, did not constitute a waiver of the statute's protection with respect to the interest.[6] It follows that the interest portion of the debt remained

---

[6]We recognize that the taxpayer also paid the accrued interest on September 19, 1997, in order to stop the accrual of further interest pending administrative decision. Payment did not in these circumstances constitute a waiver; the petition for abatement with respect to interest only remained pending. To be noted also is that the payment was made before the legislative abolition in 1999 of the "pay to play" rule, under which payment was legally compelled and subject to collection by the department notwithstanding the pendency of an application for abatement. See G. L. c. 62C, § 32, both before and after its amendment by St. 1999, c. 127, § 83; Technical Information Release 99-18 (Dec. 17, 1999), 5 Official MassTax Guide at 579 (West 2002) ("Taxpayers may avoid the accrual of interest and applicable penalties by voluntarily pay-

subject to the statute's bar to collection, and that the taxpayer was entitled to the abatement it sought.

*Decision of the Appellate Tax
Board reversed.*

◇

ing the amount in dispute. Under these circumstances, as under current law, if the taxpayer prevails ultimately in the administrative appeal process or in court proceedings, the voluntary payment will be refunded with statutory interest").